51   11
112  233

## Hugh S. Peoples v. The Evening News Association.

### Newspaper libel—Weight of evidence.

A libel suit was based on an article charging the plaintiff with arson to defraud insurers and with murder. *Held* proper to permit the defendant, in justifying, and as bearing upon the malice of the libel,

———

to show that plaintiff's claim for insurance on the house that was burned was contested.

A newspaper article complained of as libelous did not name the plaintiff, but it was practically conceded that he was the person referred to. *Held* that the exclusion of a subsequent article naming him, when offered merely for the purpose of establishing identity and objected to as incompetent for that purpose, was not material error.

Proof beyond reasonable doubt can only be required in criminal cases; in all others, including those, even, that involve facts of a criminal nature, the question is one of preponderance.

The Supreme Court will not review the conclusions of a jury upon the weight of testimony, in a case at law, if there was any evidence to be submitted to the jury, even if it were only circumstantial.

Rehearing will not be granted on the mere ground that a change in the Court has taken place or is about to do so.

Error to the Superior Court of Detroit. (Chipman J.) April 27.—June 13.

CASE.    Plaintiff brings error.    Affirmed.

*C. I. Walker* for appellant.    Where the justification of a libel is general, its truth must be proved in the sense charged in the declaration:    Odger on Libel 169, 170; Townshend on Libel §§ 212, 215, 355, 361–9; *Whittemore v. Weiss* 33 Mich. 348; *Bailey v. Kal. Pub. Co.* 40 Mich. 255; *Atkinson v. Free Press* 46 Mich. 354; even if the libelous charge be made upon belief it is not a justification to prove that the defendant believed the story to be true, after careful investigation: *Wilson v. Fitch* 41 Cal. 379; *McLaughlin v. Cowley* 127 Mass. 320; whether there is evidence tending to prove each and every charge is a question of law for the court: *Poleman v. Johnson* 84 Ill. 269; if there is the case must go to the jury: *Smith v. Gillett* 50 Ill. 291; *Crowley v. Crowley* 80 Ill. 473; *Waller v. Carter* 8 Ill. App. 511; *Compton v. Blair* 27 Mich. 399; *Webber v. Donnelly* 33 Mich. 470; *Hayes v. Homer* 36 Mich. 376; but if the testimony does not fairly tend to prove each fact essential to a decision, there is nothing for the jury to pass upon, and if submitted to them, a new trial

will be granted: *Walrath v. Campbell* 28 Mich. 123; *Scripps v. Reilly* 38 Mich. 22; *Brown v. Congress & Baker St. Rw.* 49 Mich. 153; *Wood v. Barker* id. 295; it is not enough that there is a scintilla of evidence tending to prove the fact in controversy, to authorize a submission of the question to the jury: *Improvement Co. v. Munson* 14 Wall. 442; *Pleasants v. Fant* 22 Wall. 120; *Hyatt v. Johnston* 91 Penn. St. 196; where a distinct issue of crime is made in the pleadings, the party upon whom the burden of proof rests, must prove such crime beyond a reasonable doubt, as in a criminal case: *Wilmett v. Harmer,* 8 C. & P. 695; *Thurtell v. Beaumont* 1 Bing. 339; Folkard's Starkie on Slander § 693; Odger on Libel 548–9; 2 Greenl. Ev. § 426; Townshend on Libel § 404; *Woodbeck v. Keller* 6 Cow. 118; *Clark v. Dibble* 16 Wend. 601; *Pollock v. Pollock* 71 N. Y. 142; *Steinman v. Mc Williams* 6 Penn. St. 170; *Gorman v. Sutton* 32 Penn. St. 247; *Wonderly v. Nokes* 8 Blackf. 589; *Gants v. Vinard* 1. Ind 476; *Hutts v. Hutts* 62 Ind. 214; *McConnel v. Ins. Co.* 18 Ill. 233; *Crotty v. Morrissey* 40 Ill. 477; *Fountain v. West* 23 Ia. 10; *Mott v. Dawson* 46 Ia. 533; *Barton v. Thompson* 46 Ia. 30; *Merk v. Gelzhaeuser* 50 Cal. 631; *Kane v. Ins. Co.* 38 N. J. L. 441; *Lexington Ins. Co v. Paver* 16 Ohio 324; *Strader v. Mullane* 17 Ohio. St. 624; *Coulter v. Stuart* 2 Yerg. 225; *Thayer v. Boyle* 30 Me. 475; *Freeman v. Freeman* 31 Wis. 235; *Berckmans v. Berckmans* 17 N. J. Eq. 453; *Dillon v. Dillon* 3 Curt. Eccl. 47; but see *Blaeser v. Ins. Co.* 37 Wis. 37; *Munson v. Atwood* 30 Conn. 102; *Folsom v. Brawn* 25 N. H. 114; *Spruil v. Cooper* 16 Ala. 791; *Ellis v. Buzzell* 60 Me. 209; *Hoffman v. Ins. Co.* 1 La. Ann. 216; *Sloan v. Gilbert* 12 Bush 51; *Kidd v. Fleek* 47 Wis. 443; *Kincade v. Bradshaw* 3 Hawks 63; *Miller v. Balthassern* 78 Ill. 302; *Robinson v. Randall* 82 Ill. 521; in *Smit v. Ins. Co.* 1 Gray 534, it seems to be admitted that libel cases may be an exception to the general rule; where there is an opposing presumption, a mere preponderance of evidence is not sufficient: *Knowles v. Scribner* 57 Me. 497; 1 Greenl. Ev. §§ 34–5; *Ellis v. Buz-*

*zell* 60 Me. 214; *Jones v. Greaves* 26 O. St. 6; *Scott v. Home Ins. Co.* 1 Dill. 107; when circumstantial evidence is relied upon to prove a fact, the circumstances must be proved, and not themselves presumed: *Douglass v. Mitchell* 35 Penn. St. 440; *Manning v. Ins. Co.* 100 U. S. 697–8; each material circumstance must be clearly proved, and should be intimately connected with the main fact to be proved: Wills on Circum. Ev. 108 (136); Starkie on Evid. 754–6 (856–60); circumstances that merely excite suspicion do not form the basis of a verdict: Wills on Circum. Ev. 156, 207; *State v. Banks* 43 Ia. 595 *Watkins v. Wallace* 19 Mich. 77; the press has no greater right to utter libels than the private citizen: Odger on Libel 34; *Campbell v. Spottiswoode* 3 B. &. S. 781; *Sheckell v. Jackson* 10 Cush. 25; *Snyder v. Fulton* 34 Md. 128; *Barr v. Moae* 87 Penn. St. 385; *Detroit Daily Post Co. v. McArthur* 16 Mich. 452; though some matters of public interest may be discussed by the press and by individuals, whose comments and statements in relation to which are so far privileged that, though erroneous, they do not incur liability in the absence of malice or recklessness: Odger on Libel 35, 40, 41; 2 Addison on Torts 935, 940; thus, the public have an interest in the character of candidates for office, and in the conduct of public officers, and any fair comment thereon, even if not strictly true, may not be libelous; but even then there must be no imputation of corrupt and criminal conduct: *Parmiter v. Coupland* 6 M. & W. 105; *Hamilton v. Eno* 81 N. Y. 116, 126; *Rearick v. Wilcox* 81 Ill. 77; *Curtis v. Mussey* 6 Gray 261; but a sensational article, published without regard to the public interests and merely to obtain an advantage over rival papers is not protected: *Foster v. Scripps* 39 Mich. 380: 41 Mich. 742.

*Henry W. Montrose, Atkinson & Atkinson* and *Isaac Marston* for appellee.

CAMPBELL, J. Plaintiff sued defendant for publishing a libel against him, the substantial charges being connected with the murder of one Martha Whitla, whose body was found

in Detroit river in the spring of 1879, and whose murder was alleged to have taken place January 11, 1879. The article, while it gave no name, pointed out a particular person easily identified with plaintiff, and in the course of it indicated illicit relations between him and the deceased, and also an act of arson committed some years before to defraud insurers.

Defendant pleaded the general issue, and appended a notice of special matters not now necessary to refer to. It also contained a notice of justification of the entire libel. The jury found for the defendant.

The substantial charges against plaintiff were three—the burning of his house,—criminal relations with Martha Whitla, the deceased,—and her murder.

The errors assigned include two on the admission and rejection of testimony, and three to the charge, which are substantially a failure to charge *first*, that defendant must, in order to justify, establish the truth of the entire article; *second*, that proof of a portion of the accusations less than all would not be a complete justification; and *third*, that there was not sufficient evidence of the truth of the charges to authorize a verdict for the defense.

The first allegation of error relates to the refusal of the court to rule out a question put to an insurance agent: "Will you state whether or not the insurance company contested the claim made by Mr. Peoples for indemnity under the policy of that company?"

The fact of such a contest was referred to in the libel, and we think it was admissible to show it. It was not claimed, and was not held, that such a contest had any tendency to prove the fact of arson. But it was a part of the narrative, bearing more or less against the plaintiff, and which might also have some bearing on the extent of malice in making the principal charge. It does not appear to have been regarded as a very serious point and was not much pressed on the argument.

The second allegation of error relates to the exclusion of an article published on the eve of the trial, referring to the

action, and also setting out a narrative of the facts connected with the search for the cause and instrumentalities of Martha Whitla's death. It named plaintiff as pointed out by circumstances suggested, and it is claimed by counsel practically acknowledged him to be the person aimed at in the article sued on, which gave no name.

The record shows this article to have been offered "for the purpose of showing the identity of the plaintiff." The defendant objected that it was "incompetent for that purpose," and it was ruled out. It was not offered for any other purpose, and no ruling was asked on the pertinency of it for any other purpose. The record shows that it was expressly conceded that the article sued on referred to plaintiff, and the whole record indicates that the trial proceeded on that understanding. There was therefore no damage caused by this ruling; and we need not examine whether or not the article went far enough to identify plaintiff as the alleged criminal referred to in the libel, or whether, if not confined by the offer to the single purpose of identification, there might have been other grounds on which it could have been let in.

We do not think the record supports the claim that the court refused to charge that nothing less than proof of all the libelous statements would amount to a justification. On the contrary the charge was emphatic and fully as direct and clear as the two instructions specifically asked on that subject. "The allegations must all be justified. If there are four charges, justifying three of them will not excuse the publication of the fourth. So that there must be a reasonable justification, a substantial justification, a substantial proof of the probability, of the preponderance, so to speak, of the testimony, which will establish them in their entirety."

Except as to the measure of preponderance of proof, instead of proof beyond a reasonable doubt, we can see nothing which could authorize the jury to find a verdict of justification on anything less than a complete justification. No exception was taken to the charge as actually given. But

on the measure of proof required, it is insisted the third assignment of error is well taken, and that the proof fell short of the legal standard.

Some authorities were cited to show that where proof of criminality becomes material to the issue in a civil case, and is directly involved in that issue, the rule is the same as in criminal trials, and that a preponderance of evidence is not enough to authorize the jury to find it.

That question is not an open one in this State. There are but two classes of cases recognized as requiring different rules of proof; *first*, criminal cases, and *second*, civil cases, or, to speak more accurately, cases not criminal. In all cases criminal the jury must be satisfied of guilt not merely by a preponderance of proof but beyond a reasonable doubt. In cases not criminal they may be satisfied by a preponderance of proof. And where only a preponderance will suffice, if it satisfies the jury, courts have no means of further discrimination, and the law does not require it. Courts, where they pass upon facts, and jurors also in their findings, will usually scrutinize testimony more closely when it is conflicting, or when it stands against common presumptions. We are not so easily satisfied in some cases as in others. But the discussion of these probabilities belongs to the domain of fact and not of law, and the tribunal passing on facts must judge of their weight in each case. The rule of the criminal law rests upon its own peculiar reasons, and has become settled. But in cases not criminal, and involving no criminal judgment and punishment, the court cannot require the jury to disregard any preponderance of evidence which convinces them. *Watkins v. Wallace* 19 Mich. 57; *Elliott v. Van Buren* 33 Mich. 49; *Semon v. People* 42 Mich. 141.

It is insisted, however, that the testimony does not even tend to prove the various wrongs charged against plaintiff, and that for this reason the court should have charged the jury that there was not sufficient evidence of justification to act upon.

Upon the charge of arson we think there was pertinent testimony bearing upon the plaintiff as the person who

burned the house in question. It was shown that the house was burned while unoccupied, and that he had gone into it but a few hours before the fire with some sort of a package or bundle which he did not bring out, and which on inquiry from a neighbor he said he intended to leave in the house. That he placed blinds or curtains that afternoon in the room where the fire broke out, and that the fire was not seen outside for some time. That although he professed to be in a hurry in going towards the railroad, because he was going into the country, yet he went back again, and again went into the house, and that no one else was seen there. It was also testified that the fire was aggravated and spread by throwing water on it. Enough appeared to indicate that the fire was not accidental, that no one else was shown to have been in a position to set it, and that he was twice in the building, and did what would tend to hide the light from observation. Without referring to the rest of his conduct on that day and when he returned two days thereafter from the country, there was certainly testimony which the jury had a right to consider on his responsibility for the fire, and there was no explanation or contradiction of defendant's witnesses, and no testimony in rebuttal whatever. Plaintiff had an undoubted right to urge upon the jury the weakness of the proofs, but this, it must be presumed, he failed to convince them of.

There was also testimony which had a distinct tendency to indicate illicit relations between plaintiff and Martha Whitla, and to indicate further that if such relations existed they were extended over a considerable period of time. It is not for this Court to say that the jury should have taken a more favorable view of it than they did. There was evidence showing that if there was any vicious inclination there was opportunity to carry it out. There were letters making appointments which were designed to be clandestine. There was evidence from which it could, not unfairly, be inferred that there was mutual attachment. There was evidence tending to show that she advised with him in regard to medical aid to get rid of some difficulty of a private

nature, and that she had been unchaste with some one. In view of the correspondence written by plaintiff, and not explained by the production of her letters or in any other way, and in view of the peculiar domestic intimacy in the same household of which he was the head, and she for a time in charge, and more or less circumstances bearing on their mutual feelings and relations, we have no authority to say that the verdict is such as the jury had no right to render. If so, we have no occasion to form or express opinions of our own on the facts.

A similar remark will apply to the finding as to murder. The corpus delicti was proved by very direct testimony. There is plain reason to believe that Martha Whitla came to her death by unlawful means, and that she was murdered by some one. In such cases proof of the murderer's identity and of the cause of death may even in criminal cases be shown by circumstantial evidence. In the present case there was testimony indicating that she was seen in Detroit by several persons on the 11th day of January, 1879, and was never seen afterwards. There was testimony that she stated on that day, in explaining where she was going, that she was going to see plaintiff to obtain money. There was testimony, which, whether weak or not, was admissible, that she was seen with him towards evening on the street, and that in the same evening a witness called at the house of a Mrs. Schneider in the immediate neighborhood and while there saw plaintiff and another man in a room down stairs, and heard a remark from some one, (she thinks Mrs. Schneider) that Martha was very sick. She also saw a person supposed to be a physician who was described, and whose name was given, but who is not otherwise made prominent in so much of the testimony as is in the record. There was testimony indicating some jealousy on the part of plaintiff's wife, and also of annoyance to plaintiff from applications for money on a note given by plaintiff to Martha Whitla at the time of his marriage. Plaintiff was also shown to have been active in promoting the prosecution of other parties for the murder. The history of their private

relations could not be kept out of view in considering the probabilities of his guilt.

Where murder is committed, as this, if it was murder, was committed, there can never be any probability that the facts will be known to any but guilty participants in the homicide. It cannot be expected that they will furnish means of knowledge, or that they will fail to conceal or create difficulties in arriving at the facts. Circumstantial evidence is in such cases the only resort, and of course it is usually open to the danger of erroneous inferences, and may do injustice. But if it has any legitimate tendency, if believed, to lead any honest mind to a conclusion of guilt, there is no way in which a court in a civil case can shut out such an inference. It is impossible to pick out leading facts and separate them from the multitude of smaller ones which accompany them, and which give them color. To require direct evidence would be, in many cases, to secure its destruction. In looking over this record we cannot avoid seeing that there are many things which, if the witnesses tell the truth, furnish grounds on which an inference of plaintiff's guilt may lawfully be founded. There are some on which the omission to explain them might have a damaging effect. It is easy to see that different persons might have different views concerning the truth or force of what appears in the testimony. But all of these considerations were to be addressed to the jurors who saw the witnesses and heard the testimony. It is not our function either to approve or disapprove their conclusions.

The judgment must be affirmed with costs.

GRAVES, C. J. concurred.

COOLEY, J. I agree in the principles laid down by Mr. Justice Campbell, and disagree only as to there being any evidence tending to connect Peoples with the murder of Martha Whitla.

Afterwards, at the October term of 1883, appellants

moved for a rehearing. The motion was submitted October 2, and denied October 3.

*Walker* for the motion.

*Marston* against.

PER CURIAM. This case having been heard and decided when three judges only were sitting, and a change in the Court having taken place and a further change being to occur on the first of January, a motion is now made for a rehearing at the next January term before the full Court as it will then be constituted.

*Held*, unanimously, that a rehearing will not be ordered on the ground merely that a change of members of the bench has either taken place or is about to occur.