Fowler v. Wallace.

Filed April 23, 1892.

---

No. 15,039.

## FOWLER v. WALLACE.

SLANDER AND LIBEL.—*Evidence of Defendant's Pecuniary Condition.*—In actions for slander, evidence of the defendant's pecuniary condition is competent.

SAME.—In an action of slander or libel, for imputing the commission of a crime to the plaintiff, a plea of justification must be proved beyond a reasonable doubt.

PRACTICE.—*Repeating Instructions Unnecessarily.*—It is error for the court to repeat in the charge rules of law, though applicable to the case, in such form as to give to them such an undue prominence that they may mislead the jury.

SAME.—*Contradictory Instructions.*—The court can not by contradictory instructions leave to the jury the duty of determining which of the two lines of instructions shall be followed, or what rule of law shall control the case.

Fowler v. Wallace.

SAME.—*Objections to Evidence.*—Specific objections to evidence must be stated to the trial court, and the objections as stated must be brought into the record on appeal.

CRIMINAL LAW.—*Embezzlement.*—*Intent to Defraud.*—*Evil Intent.*—To constitute the crime of embezzlement of money there must be, either at the time of receiving the money or at some subsequent time, some element of fraud or evil intention; for if there be no fraudulent purpose or evil intention there is no crime.

SAME.—*Intention to Return Money Taken.*—If there is a wilful and known wrongful taking, use or appropriation of the employer's money by an agent, the criminality of the act is not removed by the intention to make restitution of the money.

SAME.—*No Intent to Deprive Owner of Money or His Property.*—It is not essential to the crime of embezzlement that at the time the wrongful act is perpetrated there should be an intention to deprive the owner of his property.

From the Greene Circuit Court.

*E. H. C. Cavins, A. G. Cavins, J. H. Jordan, O. Matthews, W. R. Harrison* and *I. H. Fowler,* for appellant.

*D. E. Beem* and *W. Hickam,* for appellee.

ELLIOTT, C. J.—This action was prosecuted by the appellee against the appellant to recover damages for slanderous words uttered and published by the latter of the former.

The questions requiring consideration arise on the ruling denying a new trial.

One of the questions argued by counsel relates to the introduction of an affidavit made by the appellant for a change of venue. The only objection stated in the introduction of the affidavit was that " it is inadmissible." This statement was insufficient. It is settled beyond controversy that specific objections to evidence must be stated, and the objections as stated must be brought into the record on appeal. *Ohio, etc., Co.* v. *Walker,* 113 Ind. 196, and cases cited. *Bingham* v. *Walk,* 128 Ind. 164 (173).

In actions for slander, evidence of the defendant's pecuniary condition is competent.

The court instructed the jury that the appellant must

prove his answer of justification beyond a reasonable doubt. It is with reluctance and regret that we yield to the decisions upon this point, and sustain the instruction. It has been so often and so emphatically asserted that the question is so firmly settled that the rule can only be changed by legislation, that we feel bound to adhere to the doctrine of our cases. We are satisfied that the rule grew out of a misconception of principle, and we should be glad to escape from it; and if we were not impelled by duty we should decline to give it our adherence. The decisions are numerous, and their assertions unqualified and strong. *Hutts* v. *Hutts*, 62 Ind. 214; *Wilson* v. *Barnett*, 45 Ind. 163; *Tucker* v. *Call*, 45 Ind. 31; *Lanter* v. *McEwen*, 8 Blackf. 495; *Wonderly* v. *Nokes*, 8 Blackf. 589; *Landis* v. *Shanklin*, 1 Ind. 92; *Gants* v. *Vinard*, 1 Ind. 476; *Shoulty* v. *Miller*, 1 Ind. 544; *Swails* v. *Butcher*, 2 Ind. 84; *Tull* v. *David*, 27 Ind. 377. In the latest cases touching the question the court recognizes the existence of the rule in libel and slander cases, speaks of the fruitless attempt to secure its overthrow, and declares that it can not be extended to other classes of cases than actions for libel or slander. *Hale* v. *Matthews*, 118 Ind. 527. The later decisions upon the subject, as we think, recognize the rule as applying to slander and libel cases, but deny its application to other cases. It would certainly do much less evil to leave a change to be made by legislation, inasmuch as such a change, not being retroactive, would not affect pending cases and permit successful appeals or bills of review, while a change by judicial decision would open the way to litigation by appeal, and by proceedings for review in cases wherein judgments have been rendered, but against which the statute that limits the time for appealing or filing bills of review has not operated, we are satisfied at all events, that it is our duty to give the rule *stare decisis* effect, much as we may favor the unification of rules of evidence.

The court repeated, in seven, or more, instructions, the statement that the appellant must prove the material facts

in his answers of justification, beyond a reasonable doubt. In some of the instructions very strong and emphatic language was employed. Thus, in one of the instructions it is said : "To sustain the pleas of justification relied upon by the defendant in this case, in so far as the same alleges the truth of the charges, it is necessary that all of the material allegations of the same shall be established to the satisfaction of the jury beyond a reasonable doubt, and for the purpose of determining that question you may properly regard the the plaintiff as placed upon trial under an indictment by the grand jury of the county upon the charge of criminal embezzlement." In another instruction it is said : " The plaintiff occupies the same position, so far as the degree of proof is concerned, under the answers of justification, upon the grounds of the truth of the charge, as if he were on trial upon an indictment for the embezzlement of the money of the bank, for whom he was acting as cashier, and I therefore instruct you, as a matter of law, that where a plea of justification in an action for slander charges the plaintiff with the crime of embezzlement, the defendant must prove the guilt of the plaintiff beyond a reasonable doubt." We all agree that these instructions went farther than the law warrants in repeatedly asserting that the position occupied by the plaintiff was the same as if he had been on trial upon an indictment ; at all events we are clear that the iteration and reiteration of the statement so emphatically made, that the plea of justification must be proved beyond a reasonable doubt, gave the statement undue prominence, to the prejudice of the appellant. The repetition of a statement so emphatically and strongly made is very likely to mislead a jury by creating the impression that the judge intends that the statement made by him shall control and be acted upon to the exclusion of other rules. In *Powell* v. *Messer*, 18 Texas, 401, it was said : " Where the judge has embodied in his charge rules of law applicable to the case, in such form and connection as to give to each no more than its due relative prom-

Fowler v. Wallace.

inence, to repeat portions of the charge in the form of distinct and independent propositions, may not unfrequently have the effect to give to the principles thus enunciated an undue prominence and importance in the minds of the jury, and thus to mislead them in the application of the law to the evidence. It is the manifest duty of the court to guard against such a consequence." It is probably true that there are cases where the rule stated should not apply, but the case before us is a close one upon the evidence, and we are unable to escape the conclusion that the trial court by so often repeating the doctrine so broadly and strongly stated imposed a greater burden upon the appellant than the law requires him to bear.

One of the instructions given by the court reads thus: " In determining the question as to whether or not the crime of embezzlement has been committed, you should bear in mind that there is a wide difference between a felonious taking, purloining, secreting or appropriating the property or money of the bank and the mere negligent or careless loaning or use of the same in the course of his (plaintiff's) duties as cashier. In the case of a criminal taking, or permitting to be taken by another, there is existing in the mind of the criminal the felonious intent to deprive the owner of the property without compensation. In the other case, while he might incur a civil liability to the bank through his lack of faithfulness and strict attention to his duty as such cashier, there is yet lacking that felonious intent to deprive the owner of the property necessary to the commission of the crime of embezzlement." In another instruction the court declared that the defendant must prove, among other things, this fact: " That Wallace, while acting as such cashier, did unlawfully, feloniously, and for the wrongful purpose of depriving said bank of the same, take, purloin, secrete, or in some way appropriate to his own use, or to the use of others, or with such felonious knowledge, permit some other person to take, purloin, secrete, or in some way appropriate to his or her own

use, or to the use of another, the money of the bank controlled by him as cashier for the purpose of depriving the bank of the same."

These instructions assert that the purpose or intent of the cashier to deprive the bank of its money must have existed at the time of appropriating, purloining or secreting the money. They impliedly assume that there may be a wrongful appropriation of the money of the bank, and yet be no embezzlement, unless at the time of appropriating, purloining or secreting the money the cashier intended to deprive the bank of it without compensation.

The instructions are certainly misleading in asserting, as they do, that money may be purloined or secreted by a bank cashier, and there be no crime unless the intent to eventually deprive the owner of its money exists in the mind of the purloiner. We suppose it clear that where a cashier purloins and secretes the money of the bank, there is guilt, no matter what may be his intention as to ultimately depriving the bank of its property. He can not wrongfully purloin and secrete money without becoming, *prima facie*, at least, an embezzler. But we think that the instructions would have been erroneous if the words purloin and secrete had not been employed. We regard the instructions as erroneous because they convey the meaning that, although there may be a wrongful appropriation or conversion of the money of a bank by its cashier, there is no crime unless there was an intention to deprive the owner of the money wrongfully appropriated or converted.

The wrongful or negligent violation of a rule of a bank by a cashier in lending money to himself or to others does not necessarily make him an embezzler, nor does the fact that he may not be able to account for all money that may come into his hands make him guilty, *per se*, of embezzlement. There must, in order to constitute the crime, be, either at the time of receiving the money or at some subsequent time, some element of fraud or evil intention. If there

is no fraudulent purpose or evil intention, there is no crime.
But in going thus far we go to the utmost verge of the doc-
trine asserted by the cases most favorable to the appellee. If
there is fraud in taking, appropriating, or using the money,
there is a criminal act, and so there is where there is fraud
in failing to account for the money taken or used by the
cashier. The rule, as we have stated it, does not go far enough
to rescue the instructions from condemnation, for embezzle-
ment may exist without any intention existing in the mind
of a bank cashier at the time he takes, obtains or uses money
of his employer to deprive the employer of it without com-
pensation. A cashier who takes the money of the bank to
wager on a game of chance is guilty of embezzlement al-
though at the time he may intend to replace it, and may be-
lieve that he is able to do so. So, too, a bank cashier, who,
in wilful violation of the rules of the bank, takes its money
and uses it as his own, or uses it in conjunction with others,
in speculating in grain, may be guilty of a crime, although
he may intend to restore the money, and believes that he can
do so. If there is a wilful and known wrongful taking, use
or appropriation of the employer's money by an agent, the
criminality of the act is not removed by the intention to
make restitution. The intention to restore or replace does
not make a wrongful and intentional purloining, secretion or
appropriation of the money of another any the less an em-
bezzlement, nor is it essential to the existence of the offence
that at the time the wrongful act is perpetrated there should
be an intention to deprive the owner of his property.

Our statute does not expressly make a felonious intent to
deprive the owner of his property an element of the offence.
It provides that any person in the employ of another who
shall, " while in such employment, take, purloin, secrete, or
in any way whatever appropriate to his or her own use, or
to the use of others, * * * any money, coin, bills, notes,
credits, choses in action, or other property or article of value,

belonging to or deposited with, or held by such person or persons, corporation," shall be deemed guilty of embezzlement. Section 1944, R. S. 1881. If we adhere to the words of the statute we should be compelled to hold that the taking or appropriation of itself constitutes the crime, for there is no reference to intention or design. But we think that the statute should not be so strictly construed against one accused of crime. We hold that there must be some element of moral wrong or there is no crime, but we can not hold that there must be both a wrong and a felonious intention at the time of taking or appropriating the employer's money to deprive him of it.

It has been held under statutes less comprehensive than ours that the felonious intent need not exist at the time the money is taken. If formed at any time it gives a criminal character to the act. *State* v. *Findley*, 101 Mo. 217. But, waiving the objection that the instructions unduly limit the time of forming the evil intention, we will refer to the authorities upon the subject of the intention to make restoration.

The authorities are well agreed upon the proposition that the intention to restore, repay or replace money or property wrongfully and unlawfully appropriated does not take from the act its criminal character. In the case of *Commonwealth* v. *Tenney*, 97 Mass. 50, 59, it was said: "Intention to restore the bonds, and the agreement of the party who received them not to sell or dispose of them, can not do away with the criminal nature of the transaction. A guilty intent is necessarily inferred from the commission of such an act, the inevitable effect of which is to deprive the true owner of his property, and appropriate to the defendant's own use. Perhaps, in the majority of cases, the party who violates his trust in such a manner, does not expect that ultimate loss shall fall upon the person whose property he misuses. But no hope or expectation of replacing the funds abstracted can be admitted as an excuse before the law. The forger who means to take

Fowler *v.* Wallace.

up the forged paper; the thief who contemplates making eventual restitution, and the man who embezzles money, or bonds, with the design of restoring them all, fall under like condemnation in courts of justice, and wherever the rules of sound morality are respected." It is true that in the case from which we have quoted the act constituting the embezzlement was one clearly indicating an evil intention; but the rule stated is, nevertheless, a general one, and is asserted in other cases. In *Commonwealth* v. *Tuckerman*, 10 Gray, 173, 204, the question is fully examined, and the court, speaking of an intent to replace or restore money, said : " The result can not be affected by the consideration, if it be admitted to be well founded, that the defendant at the time of taking and converting the money to his own use, intended to restore it to the owners before his appropriation of it should become known to them, and believed that he should be able to do ·so, and had in his possession property to the full amount of the money which was taken." ·

The general doctrine was thus declared in *State* v. *Leicham*, 41 Wis. 565 (580) : " Neither does the fact (if it be a fact) that the defendant believed, when he converted the seeders to his own use, that he would be able to pay the owners for them when required to account for them, and intended to do so, remove from the act of conversion its fraudulent and criminal character. The fraud and crime inhere in the act and were not eliminated therefrom by any mere mental process, however amiable or virtuous it may have been." Some of the cases go much further than those to which we have referred. *State* v. *Pratt* (Mo.), 11 S. W. R. 977 ; *Hemingway* v. *State* (Miss.), 8 So. R. 317 ; *Commonwealth* v. *Pratt*, 137 Mass. 98.

It is probably true that the instructions upon this point given at the request of the appellant contradict, in some particulars, those we have considered, but, granting that there is such a contradiction, nevertheless, the error in giving those first named is not cured. It is an elementary prin-

ciple of procedure that the court can not by contradictory instructions leave to the jury the duty of determining which of the two lines of instructions shall be followed, or what rule of law shall control the case. The law must come from the court, and be so declared that the jury can follow it without confusion.

The case is very far from being one in which we can say that the verdict is so clearly right upon the evidence that errors in instructions may be disregarded.

Judgment reversed.

Filed April 23, 1892.

### DISSENTING OPINION.

OLDS, J.—I concur in the opinion of the majority of the court in all except the sustaining of the instruction given by the court that the appellant must prove his answer of justification beyond a reasonable doubt, and adhering to the former decisions of this court holding such a rule. I agree with the statement in the opinion " that the rule grew out of a misconception of principle," but I can not give my assent to the fact that it is too firmly fixed as the law of this State that it can only be changed by legislation. If this rule had been established and uniformly adhered to by an unbroken line of decisions in this State, being erroneous and contrary to an almost unbroken and unanimous line of decisions of the other States of the Union, it would seem to me that it is the duty of this court to correct the error and adopt the proper rule, since it affects only a rule of evidence applicable to cases triable in the future, and affects no property rights ; but I maintain that the decisions of this court holding that, in actions for slander, the defendant is required to prove his answer of justification beyond a reasonable doubt is contrary to the law of this State, as declared by numerous decisions of this court, and that the decisions holding such a rule have, in effect, been overruled by other decisions holding the contrary.

It is the well-settled law of this State that in all civil ac-
tions a preponderance of the evidence is all that is necessary
to establish the affirmative of an issue. An action of slander
is a civil action, and to hold that an answer of justification
in such a case must be proven by evidence beyond a reason-
able doubt is in conflict with and contrary to rules of evi-
dence governing in the trial of all other civil actions, and
if such a conflict exists then it is the duty of this court to
adhere to one general rule of evidence in all civil actions of
like character, and to overrule any decisions which may be
in conflict with such general rule.

The rule requiring a plea of justification to be proven be-
yond a reasonable doubt was adopted in England upon the
trial of a plea of justification of a charge which imputed a
felony, for the reason that if the defendant proved the plea,
the plaintiff was subjected to be put upon trial for the felony
proved, without the intervention of a grand jury, the verdict
in such a case being equivalent to an indictment of the
plaintiff.

There never was any reason for the application of the rule
in this State or in this country, and under the decisions as
they now exist in this State, as asserted in the majority opin-
ion, the rule is adopted in one class of cases only, that of
libel and slander, while as to all other classes of civil cases,
where the truth of a charge of felony is alleged, the rule is
not applied, and the plea is supported by a mere preponder-
ance of evidence, while if the truth of slanderous words
spoken is pleaded, the plea must be supported by proof be-
yond reasonable doubt.

In the case of *Continental Ins. Co.* v. *Jachnichen,* 110 Ind.
59, the appellee brought suit against the appellant upon a
policy of insurance for the value of a barn and contents cov-
ered by the policy, and which was alleged to have been de-
stroyed by a fire of unknown origin. The company answered
that the assured had himself purposely burned the property
with the intent to defraud the insurance company, and in that

case it was held that such answer was only required to be proven by a preponderance of the evidence.

In the case of *Hale* v. *Matthews*, 118 Ind. 527, the complaint averred that on a certain day appellee, Matthews, was the owner of a large quantity of lumber of the value of $925 ; that appellant, Hale, on said day, did then and there unlawfully, purposely and wilfully set fire to, burn and destroy all of said lumber, to the damage of Matthews in the sum of $925. The court charged the jury that the appellee, Matthews, was entitled to recover if he proved the averments of his complaint by a preponderance of the evidence, and the appellant contended that the appellee was not entitled to recover unless the averments of the complaint were proven beyond a reasonable doubt. The complaint charged a felony, and this court held that it was only necessary to prove its allegation by a preponderance of the evidence. The rule if applicable in civil cases applies to all pleadings alleging the commission of a felony, but this court has divided the rule, and applies it in one class of cases, to which it was applied in England, and refuses to apply it in another.

If the rule is now applicable in this State in cases of libel and slander, then one may bring suit and charge another with the crime of arson in burning his property, and recover its value if he establish the averments of his complaint by a preponderance of the evidence ; and if the defendant sue him for slander for speaking the words charging him with arson, to avoid damages he must aver and prove beyond a reasonable doubt that he committed arson in burning the property for which he has in another suit recovered the value upon a preponderance of the evidence. The decisions are so contradictory, and, in my opinion, enunciate such an anomalous and absurd rule, if they are both to be regarded as the law, that it seems to me, in justice to this court and to litigants, one rule or the other should be abandoned and overruled if such has not already been the effect of our decisions.

In the case of *Continental Ins. Co.* v. *Jachnichen, supra,*

the court said : " Leaving the subject, so far as it relates to cases of slander and libel, for further examination, when such a case arises, it is only proper to add here, that the current of modern authority tends strongly in the direction indicated by the Supreme Court of Maine, in *Ellis* v. *Buzzell, supra ; "* which decision of the Supreme Court of Maine limited the rule requiring proof beyond reasonable doubt to criminal cases, and held that only a preponderance was required in any civil case.

I regard the decision of the court in *Continental Ins. Co.* v. *Jachnichen, supra,* as abrogating the rule so far as all civil cases are concerned, except libel and slander, and in effect announcing that it would be abrogated in that class of cases when the question came before it for decision.

In the case of *Reynolds* v. *State, ex rel.,* 115 Ind. 421, the court, in a prosecution for bastardy wherein a defendant may be imprisoned if he fail to pay or replevy the judgment, held that a preponderance of the evidence is all that is necessary to establish the case against the defendant. And in that case the court says : " If any other authority were necessary it will be found in the late case of *Continental Ins. Co.* v. *Jachnichen,* 110 Ind. 59, where, after a thorough examination of the whole question, and a review of numerous cases and authorities, it was held that in all civil actions, a preponderance of the evidence only is necessary to establish the affirmative of an issue, whatever the nature of that issue may be." This enunciates the correct rule, which is in accordance with the almost unanimous current of modern authorities, and holds that only a preponderance of the evidence is necessary to establish the affirmative of any issue joined in a civil case. These decisions, the one in 110 Ind. 59, and the other in 115 Ind. 421, are later utterances of this court than any holding the rule adhered to by the majority of the court, and are directly in opposition to the others, and in effect overrule them, and the decisions holding, as in the case of *Hale* v. *Matthews, supra,* that the rule is not applicable in cases other than libel

and slander, are also in direct conflict with those holding that the rule is applicable in cases of libel and slander, for the rule, as a rule, applies to pleadings alleging the truth of a felony. The following authorities, among others, are in harmony with the views I have expressed : *Matthews* v. *Huntley,* 9 N. H. 146 ; *Woddrop* v. *Thacher,* 116 Pa. St. 340 ; *Ellis* v. *Buzzell,* 60 Maine, 209 ; *Elliott* v. *Van Buren,* 33 Mich. 49 ; *Blaeser* v. *Milwaukee, etc., Ins. Co.,* 37 Wis. 31 ; *Kincade* v. *Bradshaw,* 3 Hawks N. C. 63 ; *Marshall* v. *Thames, etc., Ins. Co.,* 43 Mo. 586 ; *Jones* v. *Greaves,* 26 Ohio St. 2 ; *Riley* v. *Norton,* 65 Iowa, 306 (10 Am. Law Rev. 642); *Schmidt* v. *New York Ins. Co.,* 1 Gray, 529 ; *London* v. *Parmele,* 15 Gray, 416 ; *Rothschilds* v. *American, etc., Ins. Co.,* 62 Mo. 356 ; *Washington, etc., Ins. Co.* v. *Wilson,* 7 Wis. 169 ; *Scott* v. *Home Ins. Co.,* 1 Dillon, 105 ; *Vaughton* v. *London, etc., R. W. Co.,* 9 Ex. 93 ; note to 2 Greenleaf Ev., section 408 ; 2 Whar. Ev., section 1246 ; *Edwards* v. *Knapp,* 97 Mo. 432 ; *Davis* v. *Rome, etc., R. R. Co.,* 56 Hun, 372 ; *People* v. *Evening News,* 51 Mich. 11 ; *People* v. *Briggs,* 114 N. Y. 66 ; *Bell* v. *McGinness,* 40 Ohio St. 204 ; *Davis* v. *Rome, etc., R. R. Co., supra.*

For the reasons given I am unable to concur in so much of the opinion as holds that an answer in justification must be proven beyond a reasonable doubt to be available as a defence in an action for libel or slander.

McBRIDE, J.—I concur in the dissenting opinion.

Filed April 23, 1892.