Michael K. BONNELL, Appellant–
Petitioner,

v.

L. David SABBAGH, Appellee–
Respondent.

No. 53A01–9602–CV–38.

Court of Appeals of Indiana.

Aug. 26, 1996.

Michael K. Bonnell, Bloomington, pro se.

Eric Allan Koch, Applegate, McDonald, Koch & Arnold, Bloomington, for Appellee–Respondent.

**OPINION**

ROBERTSON, Judge.

Michael K. Bonnell brings an interlocutory appeal from the determination of the trial court that the statute applicable to the recount of a local election places upon the petitioner the burden to prove his case by clear and convincing evidence and that the term "misconduct" in the statute means willful or intentional conduct rather than negligent or careless conduct. We affirm in part, reverse in part, and remand.

Both Bonnell and L. David Sabbagh were candidates for election to the local office of the City of Bloomington Common Council, Fifth District. In the election, Sabbagh received twenty more votes than did Bonnell. Pursuant to Indiana Code Chapter 3–12–6, Bonnell filed a verified petition for recount of the votes in the election. Bonnell claims that, due to the acts of the certain election officials of Monroe County, Indiana, some ineligible county voters illegally voted in the city election and certain eligible city voters were disenfranchised by wrongful assignment to county precincts. Bonnell claims that the sum of the errors changed the result of the election.

As a remedy, Bonnell identified Indiana Code Section 3–12–6–21.7, which allows for a recount of the votes and states:

(a) Unless the recount commission makes a finding under subsection (b), the recount commission shall:

   (1) count ballots in accordance with this article; and

   (2) not order that all ballots in a precinct not be counted.

(b) If:

(1) a party to the recount presents evidence of fraud, tampering, or misconduct affecting the integrity of the ballot within the precinct; and

(2) the commission determines that the fraud, tampering, or misconduct within that precinct was so pervasive that it is impossible for the commission to determine the approximate number of votes that each candidate received in that precinct;

the commission may order that none of the ballots from that precinct be counted.

Bonnell arranged to present his allegations to the recount commission, and the parties submitted instructions related to the recount which the trial court proposed to give to the commissioners. The trial court determined that the term "misconduct," as employed in the statute, is defined as willful or intentional in character and not as negligent or careless. The court also determined that Bonnell bore the burden before the commission to prove his allegations by clear and convincing evidence. Bonnell challenges each of these rulings in this appeal.

To interpret the meaning and intention behind I.C. 3–12–6–21.7, the trial court primarily relied upon I.C. 3–12–1–12, which provides:

(a) This section applies to votes cast by any method.

(b) Except as provided in section 13 of this chapter [absentee ballots], a ballot that has been marked and cast by a voter in compliance with this title but may otherwise not be counted solely as the result of the act or failure to act of an election officer may nevertheless be counted in a proceeding under IC 3–12–6 [recount procedures], IC 3–12–8 [contest procedures], or IC 3–12–11 [other recount and contest procedures] unless evidence of fraud, tampering, or misconduct affecting the integrity of the ballot is presented by a party to the proceeding.

(c) The act or failure to act by an election officer is not by itself evidence of fraud, tampering or misconduct affecting the integrity of the ballot.

Bonnell claims that no statutory or common law basis exists for the trial court to

have relied upon I.C. 3–12–1–12 when it interpreted I.C. 3–12–6–21.7. Where, however, two statutes address the same subject, they are *in pari materia* and we strive to harmonize them when possible. *Freeman v. State,* 658 N.E.2d 68, 70 (Ind.1995). The language of I.C. 3–12–6–21.7(b)(1) mirrors that of I.C. 3–12–1–12(b), with respect to "misconduct affecting the integrity of the ballot" when within a precinct or when presented by a party. The two statutes address substantially the same subject, and the trial court properly harmonized them.

■ Under I.C. 3–12–1–12, the act or failure to act is not by itself sufficient evidence of misconduct. Thus, according to the plain meaning of the statute, an act or omission alone is not sufficient evidence of misconduct. The statute requires something more. The trial court rightly concluded that the statute requires a certain mental state on the part of the election officer in addition to some conduct and that a willful or intentional state of mind turns the conduct into "misconduct," whereas a negligent or careless attitude does not. The trial court committed no error when it determined that the acts of "misconduct" addressed in the statutes are willful or intentional in character and not negligent or careless.

■ Bonnell claims that his allegations fall outside the provisions of I.C. 3–12–1–12 because the erroneous ballots were not "marked and cast by a voter in compliance with this title" due to the actions of the election officers. The allegations, however, involve the inappropriate actions of election officials which resulted in improper allocation of voters to precincts. By all indications in the record, when those voters went to those precincts, they "marked and cast" their ballots in compliance with the statutes.

Bonnell also claims that the plain and ordinary meaning of "misconduct" fairly includes negligent and careless conduct even though it might also include intentional and willful conduct. He further claims that the rules of grammar and punctuation establish that a mental state need not apply to the term "misconduct" in the statutes. For the reasons stated above, however, even if the legislature intended to use fraud, tampering, and

misconduct to cover three distinct kinds of activities, the legislature nevertheless intended the terms to have in common a mental element. Although the statute will be liberally construed to accomplish its purpose, *see e.g., Conley v. Hile,* 207 Ind. 488, 193 N.E. 95 (1934), we will not construe it so liberally that it excludes from a definition contained in it a meaning the legislature intended it to include.

Bonnell also claims an election official has a heightened duty, and he therefore should not be required to established a heightened standard of willful or intentional conduct by those officials. The language of the statutes provides otherwise.

Bonnell further claims that, if this Court accepts such a definition of misconduct, then the statute will be rendered meaningless and candidates will have no remedy for the type of election misdeeds, that is, negligent or careless deeds, which occurred in this case. Bonnell should take his concerns to the legislature. From the language of the two statutes listed above, we agree that the legislature intended the term "misconduct" to mean intentional and willful conduct, rather than negligent or careless conduct, on the part of election officials.

■ Bonnell next contends the trial court improperly determined that the statute applicable to the recount placed upon him the burden to prove his case by clear and convincing evidence. The general rule in Indiana is that, in civil actions, the rights of the parties are to be determined by a preponderance of the evidence. *The Continental Insurance Company v. Jachnichen,* 110 Ind. 59, 10 N.E. 636 (1887) (matter involved the imputation of crime). The clear and convincing standard has been employed "in recognition of the fact that some civil proceedings are significantly different from the ordinary economic case where 'we view it as no more serious in general for there to be an erroneous verdict in the plaintiff's favor.' " *Tucker v. Marion County Department of Public Welfare,* 408 N.E.2d 814, 820 (Ind.Ct. App.1980) (quoting *In re Winship,* 397 U.S. 358, 371, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368 (1970)).

Sabbagh submits several public policy reasons to require proof by clear and convincing evidence in the present case. He claims that public policy favors the protection of suffrage rights of Indiana citizens and that serious social and individual consequences flow from the extraordinary remedy of invalidating precincts of voters. He contends that to allow a petitioner to obtain a commission order that none of the ballots from a precinct be counted amounts to disenfranchisement of those voters and should not occur absent clear and convincing evidence of fraud, tampering, or misconduct.

Above, we decided the trial court appropriately determined that the term "misconduct" includes intentional and willful conduct on the part of election officials rather than mere negligent or careless conduct. Thus, to obtain an order that none of the ballots from a precinct be included upon recount, the petitioner must establish an act of fraud, tampering, or misconduct, each of which includes an intentional or willful mental state. Sabbagh's arguments have won the day insofar as the legislature included an element of mens rea in the statute, and we conclude that the requisite mental state adequately addresses the public policy concerns Sabbagh has advanced.

Further, Bonnell has submitted persuasive argument that, in a given case, a petition for recount actually addresses the disenfranchisement of eligible voters. In the present case, Bonnell alleges disenfranchisement, in that election officials placed eligible city voters in county precincts. In a given case, it would be no more serious for the recount commission to make an erroneous determination that none of the ballots from the precinct be counted than it would be for election officials to disenfranchise a number of individual voters through the improper allocation of voters to precincts. We therefore conclude Sabbagh has not established that public policy requires the use of the safeguard of the clear and convincing evidence standard in the recount proceeding in addition to the legislature's requirement of a positive mental state on the part of election officials.

Thus, the trial court appropriately consulted I.C. 3–12–1–12 when it ascertained the meaning of the term "misconduct" in I.C. 3–12–6–21.7. The two statutes address substantially the same subject and are harmonized where the term "misconduct" includes intentional and willful conduct on the part of election officials rather than mere negligent or careless conduct. Further, the general rule in Indiana is that, in civil actions, the rights of the parties are to be determined by a preponderance of the evidence, and Sabbagh has not established that public policy requires the use of the clear and convincing evidence standard. Therefore, the trial court improperly determined that Bonnell bears a burden of proof by clear and convincing evidence.

Judgment affirmed in part, reversed in part, and remanded to the trial court.

HOFFMAN and RUCKER, JJ., concur.